## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**MATTHEW DIETL and**
**JEANNIE DIETL,**

               **Plaintiffs,**

**v.**                            **Case No: 6:25-cv-00654-PGB-DCI**

**HILTON GRAND VACATIONS,**
**INC.,**

               **Defendant.**

_____/

### ORDER

This cause comes before the Court on Defendant Hilton Grand Vacations, Inc.'s ("**Defendant**") Motion to Compel Arbitration. (Doc. 11). The Motion to Compel Arbitration is subject to treatment as unopposed as Plaintiffs Matthew Dietl and Jeannie Dietl ("**Plaintiffs**") did not timely respond. *See* Local Rule 3.01(c).[1] Nevertheless, upon consideration of the grounds raised in the Motion to

---

[1] The Court highlights that, although the Local Rule 3.01(g) Certification at the end of Defendant's Motion to Compel Arbitration indicates that Plaintiffs oppose the requested relief, Plaintiffs did not file a response in opposition. (*See* Doc. 11, p. 19 ("[P]ursuant to Local Rule 3.01(g), . . . [Defendant] conferred with Plaintiffs' counsel by email. Plaintiffs' counsel indicated that she opposes the present Motion.")). Merely indicating opposition to a motion for purposes of a 3.01(g) Certification does not amount to a sufficient response in opposition to the respective motion. *See* Local Rule 3.01(b). In any event, upon consideration of the relevant circumstances and the arguments raised, the Court is due to grant the Motion to Compel Arbitration.

Compel Arbitration, the Court is satisfied that Plaintiffs' claims in this case are subject to binding arbitration under the Federal Arbitration Act.[2]

## I.    BACKGROUND

Plaintiffs initiated this action in state court against Defendant, alleging misconduct with regard to the sale of multiple timeshare interests spanning from 2014 to 2020. (Doc. 1-1). Ultimately, Defendant removed the case to this Court on April 14, 2025. (Doc. 1). In conjunction with Plaintiffs' timeshare purchases, Plaintiffs executed certain purchase agreements containing provisions with an agreement to arbitrate claims arising from or related to the timeshare purchases (the "**Arbitration Agreements**"). (*See* Doc 11-1, pp. 22, 33).

In due course, on April 21, 2025, Defendant filed the instant Motion to Compel Arbitration pursuant to the terms of the Parties' Arbitration Agreements. (Doc. 11). Roughly a month later, Defendant also filed a Motion to Stay the action pending the Court's resolution of Defendant's Motion to Compel Arbitration. (Doc. 14). The Court granted Defendant's aforementioned request to stay the case pending the outcome of the Motion to Compel Arbitration. (Doc. 16). To date, however, Plaintiffs have not responded to the Motion to Compel Arbitration, and the time to do so has long passed. *See* Local Rule 3.01(c) ("[Absent certain exceptions not applicable here, a] party may respond to a motion within fourteen days after service of the motion.").

---

[2]    The Court will refer to Plaintiffs and Defendant collectively herein as "the Parties."

## II.    DISCUSSION

Here, Defendant seeks to compel arbitration pursuant to the Parties' Arbitration Agreements. (Doc. 11).

The Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 1–16, makes certain written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA applies to all "written" agreements to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Sections 1 and 2 of the FAA define the field of arbitrable agreements and codify a federal "policy favoring arbitration" that makes "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (cleaned up). Sections 3 and 4 of the FAA provide "two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, [] § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Specifically, § 4 of the FAA permits a court to compel arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement—such as by filing the present action. 9 U.S.C. § 4.

Absent an arbitration agreement, parties cannot be compelled to arbitrate their claims. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1302 (11th Cir. 2017). As such, the existence of a valid arbitration agreement is a threshold "judicial determination" not referable to arbitration. *Gen. Guar. Ins. Co. v. New Orleans*

*Gen. Agency, Inc.*, 427 F.2d 924, 928 (5th Cir. 1970) ("The propriety and desirability of having an initial judicial determination of whether an arbitration contract exists is well recognized.").[3] Thus, the initial issue for determining the propriety of a motion to compel arbitration is the existence of a valid arbitration agreement. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

In construing arbitration agreements, courts generally apply state law principles relating to contract formation, interpretation, and enforceability. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). Under Florida law, a party has a right to arbitrate where: "(1) a valid, written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999).

Importantly, the Supreme Court—and thus the Eleventh Circuit—consistently enforces delegation provisions. *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Id.* at 68–69. In other words, parties can agree to arbitrate not only the merits of a particular dispute but also "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* "An agreement to arbitrate a gateway issue is simply an

---

[3]   The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

additional, antecedent agreement [that] the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does any other." *Id.* at 70. Accordingly, when a contract contains such a delegation, "a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *see Parnell v. CashCall, Inc.*, 804 F. 3d 1142, 1149 (11th Cir. 2015).

Here, the Parties' Arbitration Agreements provide:

### 26. CERTAIN LITIGATION MATTERS

**(a) MANDATORY ARBITRATION.** All disputes, claims, actions, questions or differences, whether based in or upon contract, tort, statute, fraud, deception, misrepresentation or any other legal theory, brought by or on behalf of Purchaser against any one or more of Developer/Seller, Trustee, Bluegreen Vacation Club, Inc, Bluegreen Resorts Management, Inc, Resort Title Agency, Inc, Escrow Agent, any Lender, or any of their respective affiliates, parents, subsidiaries, officers, directors, shareholders, managers, members, or employees (collectively, the "**Bluegreen Parties**", each of whom may rely upon and/or enforce the terms of this sub-Section 26(a)), which in any way whatsoever relates to or arises out of this Bluegreen Owner Beneficiary Agreement, the Property, the Bluegreen Vacation Club multi-site timeshare plan, membership in Bluegreen Vacation Club, Inc , the Trust Agreement, and specifically including the marketing, offering, acquisition, sale, use, or occupancy of the Property or Accommodations or Facilities (and related Owner Beneficiary Rights and appurtenant Vacation Points) in connection with the Bluegreen Vacation Club multi-site timeshare plan or the function, form, or operation of the Bluegreen Vacation Club multi-site timeshare plan (collectively, "**Disputes**"), shall be resolved through binding and final arbitration in Broward County, Florida, before a single arbitrator (the "**Arbitrator**"), in accordance with the Commercial Arbitration Rules (the "**Rules**") of the American Arbitration Association ("**AAA**") then in effect, except as those Rules may be modified in this Section 26 Notwithstanding the foregoing, any dispute, claim or controversy solely relating to any purchase money financing obtained by Purchaser to acquire the Property in connection with the Bluegreen Vacation Club multi-site timeshare plan shall be exclusively governed by the terms of the

> applicable lien debt instrument and shall not be subject to this sub-
> Section 26(a).

(Doc 11-1, pp. 22, 33; *see* Doc. 11).[4] Further, the Arbitration Agreements also

contain a delegation clause that delegates issues of arbitrability to the arbitrator:

> Except as to the applicability and validity of sub-Section
> 26(b), the Arbitrator, and not any court or agency, shall have
> exclusive authority to resolve any dispute or issue of
> arbitrability with respect to this sub-Section 26(a), including
> as to the jurisdiction of the Arbitrator or relating to the
> existence, scope, validity, enforceability, or performance of
> this sub-Section 26(a) or any of its provisions. Any dispute or
> issue as to the applicability or validity of sub-Section 26(b)
> shall be determined by a court of competent jurisdiction
> Moreover, nothing in this sub-Section 26(a) shall preclude the
> Bluegreen Parties from seeking interim or provisional relief or
> remedies in aid of arbitration from a court of competent
> jurisdiction.

(Doc 11-1, pp. 22, 33; *see* Doc. 11).

Pursuant to the FAA, "arbitration is a matter of contract, and courts must

enforce arbitration contracts according to their terms." *Henry Schein*, 586 U.S. at

63, 67 (citing *Rent-A-Center*, 561 U.S. at 68). As addressed above, an "agreement

to arbitrate a gateway issue is simply an additional, antecedent agreement the

party seeking arbitration asks the federal court to enforce, and the FAA operates

on this additional arbitration agreement just as it does on any other." *Rent-A-

Center*, 561 U.S. at 70. As such, the sole issue the Court must resolve at this

juncture is "whether a valid agreement to arbitrate exists," considering the issues

---

[4]    The Court notes that Plaintiffs purchased the subject timeshare interests in Bluegreen
Vacations Club from Bluegreen Vacations Unlimited, Inc. (*See* Doc. 11-1, pp. 5–7, 15–17).
However, the "Bluegreen [family of companies] is now wholly owned by [Defendant]." (Doc.
1-1, ¶ 6).

of arbitrability and waiver have been delegated to the arbitrator. *See Henry Schein*, 586 U.S. at 67–69; *Rent-A-Center*, 561 U.S. at 67.

To establish a contract exists under Florida law, the party seeking enforcement must prove offer, acceptance, consideration, and sufficient specification of essential terms. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Here, Plaintiff has not presented any opposition to the Motion to Compel Arbitration and thus, no opposition to Defendant's argument that a valid contract exists. It appears that Defendant made an offer when presenting the subject agreements to Plaintiffs and, subsequently, Plaintiffs accepted that offer by signing and delivering the executed agreements. *See Regions Bank v. Hyman*, 91 F. Supp. 3d 1234, 1255 (M.D. Fla. 2015), *aff'd sub nom. Regions Bank v. G3 Tampa, LLC*, 766 F. App'x 772 (11th Cir. 2019) ("Under Florida law, a party who signs a contract is presumed to know its contents, and he cannot avoid his obligations thereunder by alleging he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions."). With regard to consideration, "the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same." *Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. DCA 2005) (collecting cases). Lastly, there is no dispute with respect to sufficient specification of essential terms.

Ultimately, the Motion to Compel Arbitration remains unopposed. Moreover, there is no basis for the Court to find that the Arbitration Agreements

at issue are invalid contracts. In sum, the Court is satisfied that Plaintiffs' claims in this case are subject to binding arbitration under the Federal Arbitration Act

## III.  CONCLUSION

It is therefore **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Compel Arbitration (Doc. 11) is **GRANTED IN PART** and **DENIED IN PART**.[5]

2.  The Parties shall proceed to arbitration in accordance with the terms of their Arbitration Agreements. The proceedings are hereby **STAYED** pending the resolution of arbitration. The Court retains jurisdiction of the case to adjudicate any post-arbitration motions the Parties may make.

3.  The Parties shall provide written status reports regarding the pendency of the arbitration proceedings every sixty (60) days hereafter or upon the occurrence of any event that may result in the stay being lifted. Failure to comply with this Order may result in dismissal without prejudice or other appropriate sanctions.

**DONE AND ORDERED** in Orlando, Florida on August 24, 2025.

---

[5]  In the Motion to Compel Arbitration, Defendant presents a cursory request that sanctions be imposed pursuant to 28 U.S.C. § 1927 for Plaintiffs' failure to agree that the claims in this action are subject to arbitration. (Doc. 11, pp. 17–18). Without more, such a request is **DENIED** at this time.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties